UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ]<br>]<br>v.                                  ]<br>]<br>GRAYSON SHERRILL           ]<br>] | Criminal No.  21-CR-282 (01)<br><br>Judge Chutkan |

**GRAYSON SHERRILL'S SUPPLEMENT TO SENTENCING MEMORANDUM**

Defendant Grayson Sherrill, through undersigned counsel, respectfully submits the supplement, below, to its sentencing memorandum.

**A.** **The Officer's Injuries on January 6 were not Caused by Mr. Sherrill**

The government states that on January 6 the officer "sustained several blows to the head," "was the victim of many attacks," and that he suffered from headaches for weeks. While the government does not claim that Mr. Sherrill hit the officer on the helmet, the government's memo may suggest that he caused the officer's injury.

Slowed down video of the incident provided to the government (Doc 123, Exhibit J, quarter speed video, at 46 - 50 seconds on recording) shows that Mr. Sherrill did not hit the officer on his helmet. Mr. Sherrill has fully admitted his guilt in striking the officer. The government informed counsel months ago that the officer did not remember the incident with Mr. Sherrill, and the officer was not injured during the incident. During plea negotiations the defense repeated those factors for consideration by the government, and they were not disputed. The government amended its plea offer after receiving a slowed-down video of the incident which shows that Mr.

Sherrill did not hit DH on his helmet.[1] The government included the full speed video rather than the slowed down video in its sentencing memorandum, but the defense has included the more comprehensive video. Doc 123, Exhibit J, quarter speed video, at 46 - 50 seconds on recording.

The altercation in which Mr. Sherrill injected himself occurred during the first few minutes that the officer arrived on the Capitol grounds. The officer was the victim of later assaults, including an altercation within minutes of Mr. Sherrill's altercation. Mr. Sherrill witnessed that altercation, but did not insert himself. In a later extended and very violent altercation at an entrance to the Capitol the same officer's life was threatened - he reported that during that assault, among other injuries, he was "bashed in the head with his own weapon.," https://news.wttw.com/2021/07/27/first-jan-6-hearing- police-detail-violence-injuries. He also testified that someone ripped a gas mask off his face, and he had a contusion on his head after that attack.

https://news.wttw.com/2021/07/27/first-jan-6-hearing-police-detail-violence-injuries.

The officer undoubtedly suffered headaches and other injuries from that attack, which he has reported. His actions that day were heroic. Mr. Sherrill's actions did not cause the injuries the officer received.

**B.    Subsequent Actions were not Felonies**

Mr. Sherrill was originally charged along with 2 codefendants with misdemeanor counts. Mr. Sherrill was subsequently charged with felonies based on the incident involving the officer. As for his misdemeanor violations in entering the Capitol, Mr. Sherrill has written to the Court that he is appalled by his actions in entering the Capitol.

The actions of the 3 codefendants in entering the Capitol were similar. The government

---

[1] Undersigned counsel has received the FBI reports of the debriefings of both defendants which were conducted pursuant to plea agreements. Both codefendants had seen the video concerning Mr. Sherrill and the officer. Neither report states that Mr. Sherrill "bragged" that he hit an officer. Bisharry stated that Mr. Sherrill "uttered that he had hit an officer," while Bishai said that he hit him "in the helmet."

claimed that prior to entering the Capitol, codefendant Irizarry shouted and waved his pole to direct people toward the Capitol. (Mr. Sherrill did not lead or encourage others to enter the Capitol.) Mr. Sherrill's codefendants shouted chants prior to entering the Capitol through a broken window, and entered and took photos in a private conference room. Mr. Sherrill entered the Capitol through an open door, but as he told the Court, he was well aware that he should not enter the Capitol. Mr. Sherrill did not enter any private rooms. The government's sentencing memo for Mr. Irizarry showed him waving his pole both inside and outside of the Capitol. Doc 111, Government Sentencing Memorandum for Elias Irizarry, pp 5, 6, 9. The government agreed in sentencing Mr. Irizarry that his actions on January 6 were <u>not</u> "violent or destructive." Doc. 111, p. 14.

Mr. Sherrill participated in call and response shouts inside the Capitol, which started with "USA" and went through a few alterations, including "Nancy." He knows he was wrong, but the defense notes that he was not part of any pushing group. He was off to the side and not personally audible during the "Nancy" shouts. He never entered Nancy Pelosi's chambers, or her interior offices, where staffers heard shouts on the other side of their doors. He is aware of the pain he has caused for anyone who heard the chanting, and sincerely apologizes for his actions.

### C.     Disrespect and Sentencing

The government claims that "Sherrill's conduct on January 6 was the epitome of disrespect for the law and the epitome of disrespect for law enforcement." Doc. 124, p. 17.

In fact, many persons in relation to January 6 have been charged with sedition and prolonged, injurious assault. Mr. Sherrill has not been charged, much less convicted of, such actions. In contrast, he had a single assault which lasted a few seconds, did not injure anyone, and he is not affiliated with extremism.

He is well aware of the seriousness of the charges against him, but It is a gross misrepresentation to use that assertion in relation to Mr. Sherrill.

**D.** **Comparative Cases**

The government cites 2 cases as comparative to Mr. Sherrill's case:

The defendant in United States v. Richardson, 21-cr-271 (CKK) is not comparable to Mr. Sherrill.  Richardson brought a metal flagpole to the Capitol grounds.  In an effort to break the police line he struck an officer three times with the pole - stopping only when the pole broke in his hands. He was then pepper sprayed, but returned to help civilians force an 8x10 foot metal billboard into the line of officers, creating a gaping hole in the police line. Richardson, Id., doc 35, Government Sentencing Memorandum, pp 8-13. It appears that he "struggled" to acknowledge his guilt (including at the plea hearing.)  Id., p. 2.    While the goverment acknowledges that Sherrill's sentence should be shorter than Richardson's, in fact Richardson's assaultive conduct was lengthy, and when his pole broke, he moved to another weapon to break the police line.  This is not comparable to the actions of Sherrill.  Mr. Richardson received a 46-month sentence.

The government also compares Mr. Sherrell's case to United States v. Cody Mattice and James Mault, 21-cr-657 (BAH).  Mattice and Mault brought pepper spray and batons to Washington, DC, and prior going to the Capitol grounds made it clear they were ready to be violent:  "We're gonna go f** some shit up..." Mattice, supra, doc. 60, Government Sentencing Memorandum for Cody Mattice, pp. 9-10.  They repeatedly verbally harassed police.  Mault was wearing a hard hat.  Mattice pulled away the metal barricades from the police, helping to break the police line, all while being pepper sprayed by police.  Id., pp. 12-13.    The two defendants claimed that they led the push to breach the police lines. Mattice claimed that police were hitting him because he was on the front lines, yanking fences...fighting off "4 or 5 cops"...and that he and Mault had gotten everyone "hyped." Id., pp. 16-17.  The two then went to a Capitol tunnel entrance, where there was an extended, violent confrontation with police who were trying to protect the entrance.   Mattice literally climbed over other civilians to fight in the tunnel, as if he were crowd surfing a concert, followed by Mault.  At the tunnel entrance Mattice pepper sprayed the officers defending the tunnel for "about 10 seconds." Id. p. 20.  Mault then did the same. Id.,

4

p. 21.   The repeated felony assaults by these defendants, who came to Washington, DC, looking to fight, is not comparable to the action of Mr. Sherrill.

The cases referenced by the defense (Doc 123, pp. 9-10) are more comparable to Mr. Sherrill's case.  Mr. Sherrill's young age in combination with his spotless record qualify for an additional variance.

Respectfully submitted,

_____/s/_____

Joanne D. Slaight, #332866
400  7th  Street, N.W.,  Suite 206
Washington, DC  20004
Phone (202) 256-8969
Email:   jslaight@att.net